FILED NOV 10 '14 PM 4:26 USDC

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

**ALLEN CAMPBELL**                                    **CASE NO.:** 14-517-WS-M

   **V.**

**VERIZON WIRELESS (VAW) LLC,**
**VERIZON WIRELESS, VERIZON,**
**DIVERSIFIED CONSULTANTS, INC.**
**EXPERIAN INFORMATION SOLUTIONS, INC.**
**TRANSUNION LLC.**


## COMPLAINT

The Complaint of Allen Campbell, Plaintiff herein, on information and belief, states as follows:

1.  Plaintiff at material times is now and was a resident of Baldwin County, State of Alabama and formerly a resident of Polk County, State of Florida.

2.  Verizon Wireless (VAW) LLC ("Verizon Wireless"), named defendant herein, a business entity organized and existing under the laws of a state other than Alabama, but authorized to do and doing business in the State of Alabama, having appointed CT Corporation, 2 North Jackson St., Ste. 605, Montgomery AL 36104, as agent, is engaged in the business of operating wireless communication systems U.S. wide.

3.  Verizon Wireless, Verizon, d/b/a/ Verizon Wireless, Verizon Recovery, or Verizon New York, (also collectively "Verizon" or "Verizon Wireless"), separate entity or entities, with an alleged office and place of business located at 260

Airport Plaza, Farmingdale, N.Y., amongst others, is allegedly engaged in the business of operating wireless communication systems and providing personal wireless services and products to consumers, as well as managing or acquiring credit arrangements from customers involved with Verizon Wireless, and as such is engaged in the collection of debts for third parties which arise out of the programs which it acquires or which are assigned to it, or is otherwise engaged in debt collection activities.

4.  Diversified Consultants, Inc. ("DCI"), a foreign corporation, having an office and place of business at 10550 Deerwood Park Boulevard, Ste. 309, Jacksonville, FL, is engaged in the business of collecting debts for third parties.

5.  Experian Information Solutions, Inc, d/b/a Experian ("Experian") is a credit bureau or credit reporting agency as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681.

6.  TransUnion LLC ("TransUnion") is a credit bureau or credit reporting agency as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681.

### Jurisdiction.

7.  Jurisdiction is based on the laws of the United States of America pursuant to 28 U.S.C. 1331 and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq*.; the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. 1681; the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227; the Fair Credit Billing Act, 15. U.S.C. 1666, the pendent and ancillary jurisdiction of United States Courts; and declaratory relief is available pursuant to 28 U.S.C. 2201-02.

### The Factual Allegations.

8. On or about 02/04/2008, Plaintiff, while a resident of Florida, entered into an agreement with Verizon Wireless at a Verizon Wireless store in Lakeland, FL for Mobile Broadband 3G portable wireless unlimited 3G "hotspot" service; with said agreement having a "Contract End Date" of 02/04/2010.

9. Plaintiff continued the wireless service after the two-year required time frame.

10. Plaintiff returned to another Verizon Wireless Store in Polk County, Florida on or about 05/25/2010, likely for a replacement wireless card, signed an agreement for the goods or services received at the time, which agreement shows a "Contract End Date" of 05/25/2010, with $0 early termination, it being understood that existing wireless service under the 02/04/2010 contract would continue until cancellation.

11. Later, in April 2013, and per the 02/04/2008 agreement, Plaintiff cancelled his contract with Verizon Wireless via telephone with a Verizon Wireless Customer Service representative.

12. Payments for services under the 02/04/2008 agreement were made each month on Plaintiff's Visa card, and a credit for an unused portion of the month of April in the amount of $29.80 was to be refunded; nothing was mentioned in the cancellation conversation about any other alleged agreement or any other alleged claim by Verizon against the Plaintiff's account.

13. Later still, in the summer of 2013, while shopping for new cell phone service in a Verizon Wireless store in Daphne, Alabama, Plaintiff was informed for the first time that Verizon had a notation in his Verizon account of a "Contract End Date"

3

of 10/07/2013, and that Verizon Wireless was seeking additional payments from Plaintiff as a consequence thereof.

14. Plaintiff promptly contacted Verizon Wireless and spoke with a Verizon Wireless Customer Service Representative ("CSR"), who informed Plaintiff that Verizon Wireless had another alleged "contract" that it had assigned to its account in the Plaintiff's name, a contract for 4G internet service from a Verizon Wireless store in Harvey, LA; but it was acknowledged by the Verizon Wireless CSR that this other "contract" was neither signed by Plaintiff nor by anyone else, and that Verizon Wireless had no record of any request by Plaintiff for the 4G service that was the subject of this other alleged contract.

15. The other alleged "contract" appears to be from Verizon Wireless in Harvey, LA and is dated 10/07/2011 ("Harvey Form" contract); the Harvey Form contract does have an authorized signature block at page three thereof, which does reflect the Plaintiff's name below the signature line, but instead of any signatures on this line, or anywhere else in the agreement, this alleged "Harvey Form contract" bears only the hand-written notation: "phone verified."

16. Plaintiff promptly informed the Verizon Wireless CSR that he had never been in or had any contact with the Harvey store, had never requested 4G service or equipment, had never agreed to such service, and had never received any 4G service and equipment from Verizon Wireless.

17. Verizon Wireless CSR confirmed that Plaintiff had declined an upgrade to 4G service, and the Verizon Wireless records did not show that any 4G service had been provided to the Plaintiff.

18. Verizon Wireless CSR apologized, emailed the aforesaid agreements to the Plaintiff, and stated that a clarification would be made to the account, the results sent to him, and invited Plaintiff to resume his shopping at the local Verizon Store.

19. Plaintiff returned to the Verizon Wireless store, but while shopping for new wireless service was again informed that Verizon Wireless still claimed that outstanding amounts were due from his account; but after discussing the inappropriateness of these items against his account, Verizon Wireless offered to "adjust" or "account" for these additional charges by including them as an additional cost to any new service that Plaintiff would receive, if he were to agree to a new wireless contract.

20.  Considering the Verizon Wireless offer to add existing improper and baseless charges to any new contract for service as inappropriate, Plaintiff declined.

21. Plaintiff then received for the first time a written billing from Verizon Wireless, dated 08/26/2013, showing Account number 62122460-0001, invoice number 693283674, and requesting payment of $148.44.

22. Plaintiff immediately called Verizon Wireless, as requested on the billing, to object and to inquire once again about the contractual basis for this billing, but Plaintiff was again informed of nothing other than a reported contract assigned to Plaintiff's account, the same contract form that was unsigned and inapplicable on its face; apologies were again made, and Plaintiff was again told that a notation clarifying the billing would be made, or a communication would be sent which would explain the situation.

23. Contrary to these understandings, Verizon Wireless continued to send written billings to the Plaintiff for the same improper and baseless charges, without any clarification or explanation offered.

24. Plaintiff sent a letter to Verizon Wireless by registered mail on September 23, 2013, the letter itself dated September 21, 2013, again objecting to the Verizon Wireless billing, explaining in some detail the history of the dispute, noting increasingly obnoxious and harassing phone calls, and requesting Verizon Wireless to withdraw its claims against Plaintiff and Plaintiff's account, and to reimburse the $29.80, which was acknowledged as due and owing when the only legitimate contract between the parties was properly cancelled.

25. However, instead of clarifying the account or responding with an explanation of Verizon's position, as Verizon Wireless had promised, Verizon Wireless continued demanding payment, and arranged for or acted as an entity, self-described as Verizon New York, to make repeated calls and demands for payment on behalf of Verizon Wireless, and at least once early on a weekend morning, demanding from Plaintiff immediate "arrangements" for payment.

26. Verizon New York was informed that there was no outstanding legitimate contract between Plaintiff and Verizon Wireless, and that the persistence by Verizon Wireless on an unsigned contract form that it had arbitrarily assigned to the Plaintiff's account was in all likelihood fraudulent, and that Plaintiff wanted this brought to the attention of Verizon Fraud.

27. Promising to refer Plaintiff to Verizon Fraud, the Verizon New York representative immediately switched the call, duly answered by a representative

6

who claimed to be with Verizon Fraud, and who informed Plaintiff that their investigation had revealed that Plaintiff had walked into a store and was given a device and agreed to a contract, and Verizon Wireless wanted its money.

28. As this explanation was so patently false, and so contrary to what had been conveyed previously, Plaintiff requested the identities and the business addresses of  the Verizon Fraud representative and her supervisor; however, after repeatedly requesting this information, Plaintiff was eventually informed that they were not in fact representatives of Verizon Fraud, and Plaintiff was instead given only the mailing address of Verizon New York in Farmington, N.Y., the same location previously given by Verizon Wireless when demanding "immediate" arrangements for payment, without any regard for the illegitimacy of the Verizon Wireless claim.

29.  Plaintiff then independently contacted Verizon Fraud, relayed the outline of the dispute, identified the letter which had been sent to Verizon Wireless, together with the lack of any response by Verizon Wireless; the Verizon Fraud representative said she was able to search the Plaintiff's account via her computer terminal, "saw a problem with the account," requested time to study it, and promised to get back to the Plaintiff.

30. Neither Verizon Fraud nor Verizon Wireless ever got back to the Plaintiff.

31. Neither Verizon nor Verizon Wireless ever offered an explanation as to any legitimate basis of the Verizon Wireless claims against the Plaintiff.

32. Instead, Verizon Wireless or Verizon , or both, engaged, or operated as an entity known as, "North Shore Agency," so as "to proceed with collection of the above

balance of $148.44," providing Plaintiff with a Verizon Wireless return mail address for payment, and a telephone number to "call the client directly."

33. When Plaintiff called the number directly, it was answered by someone who claimed to be from Verizon Wireless Recovery, who informed Plaintiff that the matter should not have been referred for collection, and stated that the credit bureaus would not be notified while the matter was under review.

34. Verizon Wireless nevertheless notified the Experian and TransUnion credit bureaus of a debt owed to it by the Plaintiff.

35. Verizon Wireless also referred its alleged claim for a delinquent account against Plaintiff to an outside collection agency identified as MRS Associates of Cherry Hill, N.J.

36. Plaintiff on February 3, 2014 sent a letter to MRS Associates demanding verification of a legitimate debt, and included a copy of Plaintiff's prior letter of September 21, 2013 to Verizon Wireless, which letter addressed the matter and disputed any legitimate basis for the Verizon Wireless claim.

37. MRS informed Plaintiff of Verizon Wireless sending out claims for collection even with written letters disputing same, and warned Plaintiff of a Verizon Wireless practice of serially transmitting debt claims to outside debt collection agencies until the debt claim was paid, whether properly disputed or not.

38. MRS reportedly sent the additional copies of Plaintiff's correspondence on to Verizon Wireless for response, but as of 02/24/2014 had heard nothing, but promised to inform Plaintiff as soon as any response was received from Verizon.

39. Neither MRS nor Verizon Wireless ever got back with Plaintiff.

40. Plaintiff received a copy of his credit report from Experian on 02/06/2014, which showed negative credit information for a debt in "collection" from Verizon Wireless that had been reported to Experian as late as Jan. 2014.

41. Plaintiff received a copy of his credit report from TransUnion on 02/07/2014, which showed an "adverse" account "in collection" from Verizon Wireless that had been "updated" on 01/31/2014.

42. Plaintiff returned to Experian an Experian dispute form in regards to the Verizon Wireless report, duly prepared with the appropriate identifying information Experian sought, along with copies of correspondence of 09/21/2013 and 02/03/2014 as referenced above.

43. Plaintiff returned to TransUnion a TransUnion dispute form in regards to the Verizon Wireless report, duly prepared with the appropriate identifying information TransUnion sought, along with copies of the correspondence of 09/21/2013 and 02/03/2014 as referenced above.

44. Plaintiff received from Experian a new report dated April 29, 2014 showing the Verizon Wireless account three months in arrears and the comment "Account information disputed by consumer...".

45. Plaintiff received from TransUnion a mailing dated 05/10/2014 showing the "results" of its investigation showing the Verizon Wireless account 27 months "unknown" but "placed for collection" and "Acct info disputed by consmr."

46. Plaintiff on May 28, 2014 wrote separate letters to TransUnion and Experian objecting to their investigations, explaining why Plaintiff believed their investigations were unreasonable, and requesting full file disclosure, specifically

all information in their files which pertain to the Plaintiff and Verizon, and deleting the subject credit reporting item from Verizon, as well as identifying any third-party who received the subject derogatory report from Verizon.

47. Experian on June 10, 2014 refused Plaintiff's requests and refused to investigate "your dispute again."

48. TransUnion on 06/20/2014 refused Plaintiff's requests and claimed its "investigation is now complete," without in any way responding to Plaintiff's requests.

49. Meanwhile, on or before 05/01/2014, Verizon Wireless referred for collection the subject account to Diversified Consultants, Inc., ["DCI"] of Southgate, MI and Jacksonville, FL, with the balance now stated to be $175.15

50. Before receipt of the first mailing from DCI, Plaintiff received telephone calls on his cell phone (a Sprint phone) and responded to caller IDs from the New Orleans area, the same area code as Plaintiff's Sprint cell phone, but the calls were actually made by DCI in Jacksonville, FL.

51. At and after Plaintiff's first contact with DCI, Defendant DCI made repeated and annoying phone calls to Plaintiff, at various times of the day and night, through what Plaintiff believes to have been automatic dialing systems, in an effort to collect from Plaintiff the baseless claim of Verizon and to demand from Plaintiff an immediate payment of the claim and a separate collection fee.

52. A DCI representative told Plaintiff that he did not care how many times Plaintiff had written to Verizon or to anybody else about the Verizon Wireless claim, if Plaintiff wanted to resolve the claim, he had to deal with DCI and DCI only.

53. A DCI representative told Plaintiff that if he ever wanted the telephone calls to stop, the only thing to do is pay DCI.

54. A DCI representative also told Plaintiff that DCI did not care if the debt they were pursuing from Plaintiff was in dispute or was inappropriate or was even a fraudulent claim, since DCI had an indemnity agreement with Verizon Wireless to protect them.

55. A DCI representative demanded that Plaintiff provide DCI with "proof of equipment/hand set return receipt from place of purchase," and when Plaintiff replied that the disputed Verizon account billings had been for wireless service, based on a Verizon form contract without any signature, fraudulently assigned to the Plaintiff's account, the DCI representative became rude, abusive and again threatened that Plaintiff had to work with him and only him, and hung-up the phone.

56. Plaintiff sent a letter to DCI dated May 20, 2014, once again demanding verification of the legitimacy of the debt, and complained about DCI's misrepresentations, DCI's threats and its abusive conduct.

57. Plaintiff received a written response from DCI, a response which DCI claims "serve(s) as a validation of the debt."

58. The only information DCI sent in its attempt to validate the legitimacy of the debt were copies of Verizon Wireless billings against the subject account; nothing was included to address the underlying validity and legitimacy of the Verizon Wireless claims.

59. Plaintiff continued to receive collection calls from DCI even after receipt of Plaintiff's letter of May 20, 2014, and Plaintiff was again warned that Verizon Wireless would continue to assign collection agencies to come after him until payment was received.

60. Plaintiff travelled to the Verizon Wireless store in Harvey, LA and spoke with one of the assistant managers on duty.

61. Plaintiff was informed and believes that it was Verizon Wireless policy not to release any wireless equipment without an agreement for activation in place.

62. After showing the "phone verified" "Harvey Form Contract" of 10/07/2011 to the Verizon Assistant Manager, he checked his computer records and stated that the wireless equipment referenced thereon was not in fact sent for activation.

63. The Verizon Wireless computer records that the Assistant Manager could access did not reflect what happened to the wireless equipment, the records suggest it was sent to 755 Magazine St., New Orleans, LA, a former work place of the Plaintiff, but Plaintiff was not there in October 2011, having left that firm in 2009, and at the time the alleged "phone verified" shipment to the New Orleans address was supposedly made, Plaintiff was living in Baldwin County, AL and was working in Pensacola, FL, and had never heard of any such shipment.

64. Verizon Wireless records from the Harvey store show that the wireless equipment in question was never in fact activated.

65. The Verizon Wireless Assistant Manager further informed Plaintiff that the Verizon Wireless records he could access do not reflect the identity of any party to the 2011 "phone verified" "Harvey Form" contract, nor did the records reflect

the identity of the Verizon Wireless employee who arranged to release wireless equipment with no activation or other agreement in place for that equipment.

## Capacity of the Parties

66. Plaintiff is a consumer as that term is used in the FDCPA.

67. Defendants Verizon, Verizon Wireless and Diversified Consultants, Inc.("DCI") are engaged in debt collection activity or the collection of debts from consumers on behalf of third parties, through the use of telephone, electronic mail and regular mail.

68. Defendants Verizon and/or Verizon Wireless either employed, directed or acted in concert with employees of others, who, in the process of collecting its alleged debt from Plaintiff, used or allowed a name other than their own, which would indicate that a third person or party is actually collecting or attempting to collect the Verizon Wireless debts.

69. Defendants Verizon Wireless and/or Verizon and DCI qualify as debt collectors under the FDCPA.

70. Defendants Verizon Wireless, Verizon and DCI are responsible for the actions of their alleged employees or agents as alleged herein, or are responsible for the failure properly to train or supervise them.

71. Defendants Experian and TransUnion are credit reporting agencies as that term is used in the FCRA.

72. Defendant Verizon Wireless is a furnisher of information to a credit reporting agency as that term is used in the FCRA.

73. Plaintiff is a consumer as that term is used in the FCRA.

## CLAIMS FOR RELIEF

### Count I--FDCPA

74. Plaintiff incorporates by reference Paragraphs 1 thru 65 inclusive.

75. Defendants Verizon Wireless, Verizon and Diversified Consultants, Inc. ("DCI"), all or singular, have violated the FDCPA as indicated in, but not necessarily limited to, the paragraphs immediately below, each of which is pled individually and alternatively:

76. Defendants have violated Section 1692 (e)(2)(A) in that they made false, deceptive or misleading representations concerning the character, amount or legal status of the debt which they claim is due from the Plaintiff.

77. Defendants have violated Section 1692(e) (10) and 1692(f) in that they used false representations, deceptive means, or employed other unfair means in the attempt to collect an alleged debt.

78. Defendants have violated 1692(d) in that they engaged in or caused repeated telephone conversations with the intent or purpose to annoy, harass or abuse.

79. Defendants have violated 1692 (e)(8) in that they communicated credit information known to be false.

80. Defendants have violated 1692 (e)(5) in that they threatened or caused others to threaten action that cannot legally be taken.

14

81. Defendants have violated 1692 (e)(7) in that they falsely implicated that Plaintiff, having agreed to a contract, failed to fulfill his promises, intending to cause humiliation and disgrace.

82. As a result of the above stated violations, Plaintiff is entitled to Judgment that each of Defendants' conduct is in violation of the FDCPA, for statutory damages, for actual damages, and all costs and attorney fees, as per Section 1692 (k), jointly and severally.

### Count II-FCRA

83. Plaintiff incorporates by reference Paragraphs 1 thru 65 inclusive.

84. Defendants Verizon Wireless, Experian and TransUnion, all or singular, have violated the FCRA as indicated in, but not necessarily limited to, the  paragraphs immediately below, each of which is pled individually and alternatively:

85. Defendant Verizon Wireless has violated Section 1681i(a)(2) and 1681i(a)(1) in that they received notice of a dispute with regard to the completeness or accuracy of information as provided, and as provided by Plaintiff to a consumer credit reporting agency, and thereafter the Defendant failed to conduct a reasonable investigation, and/or failed to report the results of any reasonable investigation within the period of time stipulated in 1681i(a)(1).

86. Defendants Experian and TransUnion, all or singular, have violated Section 1681i and/or 1681g in that they failed to reasonably investigate or re-investigate, promptly delete the inaccurate Verizon Wireless derogatory credit information, and/or provide full file disclosure, all as duly requested by Plaintiff.

87. Defendants Experian and TransUnion have violated Section 1681e(b) in that they failed to have or failed to follow reasonable procedures to assure maximum accuracy of information in the Plaintiff's credit report.

88. Defendant Verizon Wireless has violated Section 1681i(a)(2) in that it received notice of a dispute with regard to the completeness or accuracy of information provided to a consumer reporting agency, and reported back to the credit reporting agency with information that was misleading, inaccurate and/or incomplete.

89. Defendant Verizon Wireless has violated Section 1681s-2(a) and 2(b) because it was on notice from a consumer credit reporting agency that the Plaintiff had disputed the information reported by Verizon Wireless, and Verizon Wireless had certain obligations as a consequence thereof, which Verizon Wireless failed to fulfill in any or any reasonable fashion.

90. As a result of the above stated violations, Plaintiff is entitled to Judgment that each of Defendants' conduct is in violation of the FCRA, for statutory damages, for actual damages, and for punitive damages as may be applicable for FCRA violations for failure to reasonably reinvestigate after notice of a dispute, as may be authorized per Sections 1681n and o, and for all costs and attorney fees, jointly and severally.

**Count III-TCPA**

91. Plaintiff incorporates by reference Paragraphs 1 thru 65 inclusive.

92. Defendant DCI was prohibited by the TCPA , 46 U.S.C. Section 227 (b)(1)(A)(iii), from making any call using any automatic dialing telephone equipment to any telephone number assigned to a cellular telephone service.

93. Defendant DCI made such unsolicited calls to Plaintiff's cell phone.

94. As a result of the above stated violations, Plaintiff is entitled to Judgment that Defendant DCI's conduct was in violation of the TCPA, and that Plaintiff is entitled to the greater of actual damages or $500 for each violation, plus additional damages up to the greater of $1000 or treble damages for each violation committed knowingly or willfully, as authorized under Section 227(b)(3).

**Count IV- Negligence Per Se based on Truth in Caller ID Act**

95.  Plaintiff incorporates by reference Paragraphs 1 thru 65 inclusive.

96. Defendant DCI, or the persons for whom they are responsible, deliberately falsified the telephone number and/or name relayed as the Caller ID in order to disguise the source or identity of the party actually calling, and did so to cause the Plaintiff emotional and actual harm by the pursuit of, and wrongfully obtaining the payment of, an illegitimate claim.

97. The practice described in the Paragraph immediately above is known as "caller ID spoofing," and is illegal under the provisions of the Truth in Caller ID Act , 47 U.S.C. 277.

98. In addition to the general provisions of the Truth in Caller ID Act , 47 U.S.C. 277, as set forth above, Plaintiff sustained additional costs, expenses or damages in

connection with  unreimbursed travel costs, and extra expenses incurred to

prevent Defendants from gaining advantage through the immediate payment of an

illegitimate claim.

99. As a result of the above stated negligence per se, Plaintiff is entitled to Judgment

that Defendant DCI's conduct was negligent, and that Plaintiff is entitled to the

damages caused thereby.


**Count V- Common Law Fraud.**

100.      Plaintiff incorporates by reference Paragraphs 1 thru 65 inclusive.

101.      The representations by Verizon Wireless, or by those for whom Verizon

Wireless are responsible, that Plaintiff requested and received 4G wireless service

and equipment are and always were false, and Defendant knew they were false,

and these representations were made with the intent to harm the Plaintiff, and did

cause harm.

102.      The assignment by Verizon Wireless of the "Harvey Form" contract to

Plaintiff's account, and the reliance by Verizon Wireless on that "Harvey Form"

contract in the Plaintiff's account to pursue a debt claim against Plaintiff as stated

hereinabove, or to use in a scheme to add illegitimate charges to a new contract

for service, were deceptive; Verizon Wireless was informed it was deceitful, and

the pursuit of the Verizon Wireless debt claim in the face of such knowledge was

willful or deliberate, and carried out with the intent to cause Plaintiff harm, and

did cause Plaintiff harm.

103.    Verizon Wireless had a duty to report accurate information to consumer credit reporting agencies.

104.    Verizon Wireless knew that the "Harvey Form" contract" was not an agreed contract, and knew that there was no transaction with the Plaintiff that could give rise to any such legitimate contractual debt, and Verizon Wireless was so informed.

105.    The representations by Verizon Wireless to the consumer credit reporting agencies that there was a legitimate debt owed by the Plaintiff were without any reasonable basis, and Verizon Wireless knew that any such representations to the credit reporting agencies were incomplete, false, and/or inaccurate, without reasonable basis, and in reckless disregard of the Plaintiff's rights under state law and/or the FCRA and/or FDCPA.

106.    The representations by Verizon Wireless to the consumer credit reporting agencies about the character, amount and legal status of its claim against Plaintiff were without reasonable basis and were false, deceitful and/or fraudulent.

107.    Plaintiff sustained damage as a result of the misrepresentations of Verizon Wireless.

108.    The conduct of Verizon Wireless as to Plaintiff was willful or deliberate, undertaken with the intent to deprive Plaintiff of monetary payments under the illegitimate "Harvey Form" contract," or to oppress the Plaintiff with false reports to credit reporting agencies, and to harass the Plaintiff with serial debt collection efforts, when Verizon knew that there was no contractual basis for the debt claim that it had assigned to Plaintiff's account.

109.     As a result of the fraud by Verizon Wireless, Plaintiff is entitled to

Judgment that Defendant Verizon Wireless' conduct was fraudulent, and that

Plaintiff is entitled to the damages caused thereby, and that Plaintiff is entitled to

the recovery of additional and exemplary or punitive damages from Defendant

Verizon Wireless.

### Jury Trial Requested.

Plaintiff requests a jury trial on all issues so triable.


### PRAYER FOR RELIEF

**Wherefore,** premises considered, Plaintiff prays Judgment be entered against

each of the Defendants, as follows:

1. Defendants Verizon Wireless, Verizon and Diversified Consultants, Inc.,
   all or singular, have violated the FDCPA, and Judgment be entered against
   each one of them, jointly and severally, for actual damages, statutory
   damages, and all costs and attorney fees; and that

2. Defendants Verizon Wireless, Experian and TransUnion, all or singular,
   have violated the FCRA, and that Judgment against each one of them,
   jointly and severally, be entered for statutory damages, for actual
   damages, and for punitive damages as may be applicable for FCRA
   violations for a failure to reasonably reinvestigate after notice of a dispute,
   and for all costs and attorney fees; and that

3. Defendants Experian and TransUnion, all or singular, have violated the
   FCRA, and Judgment against each one of them be entered so as to enjoin
   and order them to (a) produce all information in their files or under their
   control which pertain to Plaintiff and Verizon Wireless, (b) delete the
   credit reporting item by Verizon Wireless as to Plaintiff, all as duly
   requested by Plaintiff, (c) block any future report of that item, and (d)
   identify any third-party who received a report containing the Verizon
   Wireless derogatory credit information as it pertains to Plaintiff; and that

4. Defendant DCI has violated the TCPA, and that Plaintiff is entitled to the
   greater of actual damages or $500 for each violation, plus additional
   damages up to the greater of $1000 or treble damages for each violation

committed knowingly or willfully as authorized under Section 227(b)(3); and that

5.   Defendant DCI's conduct was negligent and that Plaintiff is entitled to the damages caused thereby, as well as all costs of these proceedings; and that

6.   Defendant Verizon Wireless' conduct was fraudulent, and that Plaintiff is entitled to the damages caused thereby, and Plaintiff is entitled to the recovery of additional and exemplary or punitive damages from Defendant Verizon Wireless; and

7.   Judgment be entered granting Plaintiff such other and further relief as law or equity may require.

*Allen F. Campbell*

Allen F. Campbell
Pro Se.
322 Cumberland Rd.
Fairhope, AL 36532
Tel: 504-905-0063
acampbell@alsp.org


Service Instructions.

Please Serve:

Verizon Wireless (VAW) LLC
and
Experian Information Services, Inc.
Through
CT Corporation
2 North Jackson St., Ste. 605,
Montgomery AL 36104;

Please serve:
TransUnion LLC
Through
CSC LAWYERS INCORPORATING SVC INC
And/or Prentice-Hall Corporation System, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

Please Serve Via Alabama Code 10A-1-7.21:

Diversified Consultants, Inc.
Through Its Registered Agent:
Mr. John R. Crawford
1200 Riverplace Blvd., Ste. 800
Jacksonville, FL     32207

Please withhold service on Verizon and/or Verizon Wireless
pending further instructions.