IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALLEN CAMPBELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 14-0517-WS-N |
| | ) |
| VERIZON WIRELESS, LLC, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter comes before the Court on the Motion to Compel Arbitration and Stay
Judicial Proceedings (doc. 5) filed by defendants Verizon Wireless, LLC, Verizon Wireless and
Verizon (collectively, "Verizon").  Also pending are dueling Motions to Strike Affidavits (docs.
15 & 26) filed by plaintiff and Verizon during the course of briefing the Motion to Compel
Arbitration.[1]

---

[1]     With regard to the Motions to Strike, plaintiff's Motion to Strike Affidavit of
Jennifer Dalmida (doc. 15) is **denied**.  In relevant part, the Dalmida Affidavit authenticates
certain business records on which Verizon relies and contains statements outlining Verizon
policies and procedures.  Contrary to plaintiff's Motion to Strike, these portions of the Dalmida
Affidavit are specific, based on personal knowledge, and relevant to the Motion to Compel
Arbitration.  Plaintiff's accompanying Rule 56(d) request (incorrectly cited as Rule 56(f)) is
likewise **denied** because Campbell does not require discovery at this time as to the relevant
portions of the Dalmida Affidavit.  If Campbell did not sign the subject agreements or was not
given the subject documents, then he would know that (and be able to argue that) on the Motion
to Compel Arbitration without formal discovery.  However, Campbell has not denied signing
those agreements or receiving those documents, nor has he professed ignorance about whether he
did or did not.  Verizon's tit-for-tat Motion to Strike Affidavit of Allen F. Campbell (doc. 26) is
**denied** because the Court need not consider (and has not considered) the objected-to portions of
the Campbell Affidavit (the vast majority of which are legally improper, irrelevant, and/or do not
comport with the Federal Rules of Civil Procedure) in adjudicating the Motion to Compel
Arbitration.  Nothing in the Campbell Affidavit would alter the analysis or outcome of the
Motion to Compel Arbitration in any meaningful respect; therefore, no constructive purpose
would be served by striking it.

I.      **Relevant Background.**

Allen Campbell, a retired attorney proceeding *pro se*,[2] commenced this action by filing a Complaint (doc. 1) against Verizon Wireless (VAW) LLC, Verizon Wireless, Verizon, Diversified Consultants, Inc., Experian Information Solutions, Inc. and TransUnion LLC.  Well-pleaded factual allegations in the Complaint reflect that Campbell entered into a contract with Verizon for wireless communications service in February 2008, and remained in such a contractual relationship with Verizon until he canceled the contract in April 2013.  Plaintiff acknowledges in his pleading that it was "understood that existing wireless service under the 02/04/[2008] contract would continue until cancellation," without regard to any otherwise specified contract end date.  (Doc. 1, ¶ 10.)

Sometime after terminating his Verizon contract, the Complaint alleges, Campbell learned that Verizon claimed that he owed $148.44 for a contract for 4G Internet service that Campbell had allegedly entered into at a Verizon store in Harvey, Louisiana in October 2011.  Campbell denies having agreed to a service contract with Verizon in October 2011.  He further denies signing up for or receiving 4G service or equipment from Verizon, or having any contact in October 2011 with a Verizon store in Harvey, Louisiana.  Far from signing up for 4G service, as Verizon's bills reflected, Campbell alleges that he "had declined an upgrade to 4G service" from Verizon on his existing service contract.  (*Id.*, ¶ 17.)  The Complaint states that, even as Verizon representatives apologized and acknowledged the error, Verizon continued to bill

---

[2]      As a general rule, "[p]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  Nonetheless, the application of those principles is attenuated here because Campbell is a retired attorney with formal training and considerable experience in the law.  *See, e.g., Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("Mr. Olivares proceeds *pro se* in his appeal.  We cannot accord him the advantage of the liberal construction of his complaint normally given *pro se* litigants … because he is a licensed attorney.") (citation omitted); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2nd Cir. 2001) ("*pro se* attorneys such as Holtz typically cannot claim the special consideration which the courts customarily grant to *pro se* parties"); *Thomas v. Humfield*, 1994 WL 442484, *3 (5th Cir. Aug. 2, 1994) ("With his formal legal training, Thomas should be expected to understand and to observe court procedures that we might otherwise be willing to excuse if neglected by typical *pro se* claimants."); *Godlove v. Bamberger, Foreman, Oswald, and Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of *pro se* applicants gently, but a *pro se* lawyer is entitled to no special consideration.").

Campbell for the disputed $148.44 amount, referred the matter to defendant Diversified Consultants, Inc. for collections, and made derogatory credit reports about Campbell to defendants Experian Information Solutions, Inc. and TransUnion, LLC.  According to the Complaint, Experian and TransUnion both failed to conduct reasonable investigations or correct Verizon's erroneous reporting information when Campbell notified them of the dispute.  As for Diversified Consultants, the Complaint alleges that this defendant harassed Campbell with repeated collection calls to his cell phone demanding immediate payment of both the Verizon invoice and a separate collection fee, despite being placed on notice that Campbell had disputed the debt, and informing him that the harassing calls would never stop unless he paid Diversified Consultants directly.

Based on these factual allegations, Campbell's Complaint interposes claims against defendants for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"); violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"); violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"); negligence *per se* for "caller ID spoofing" by Diversified Consultants, in violation of the Truth in Caller ID Act, 47 U.S.C. § 277;[3] and fraud.  Focusing on the Verizon defendants, the causes of action outlined in the Complaint are as follows: (i) Verizon violated the FDCPA by making false or misleading representations about the character, amount or status of Campbell's debt, using false or unfair means to collect a debt, and falsely implying that Campbell had failed to fulfill contractual promises with the intent of causing him humiliation and disgrace; (ii) Verizon violated the FCRA by failing to conduct and/or report the results of a reasonable investigation into Campbell's dispute of the adverse credit reporting information it supplied to TransUnion and Experian; and (iii) Verizon engaged in fraud by representing that Campbell had requested and received 4G wireless service and equipment, knowing such representations to be false and intending to harm Campbell, and by knowingly making false representations to TransUnion and Experian about his alleged debt.

---

[3]     The Complaint repeatedly cites "47 U.S.C. § 277" for the Truth in Caller ID Act (*see* doc. 1, ¶¶ 97-98); however, no such citation exists.  Rather, the Truth in Caller ID Act of 2009 made certain amendments to 47 U.S.C. § 227.  *See* Pub.L. 111-331, 124 Stat. 3572.

The Verizon defendants now seek to compel arbitration of Campbell's claims against them, reasoning that such claims are within the ambit of arbitration provisions in a pair of written agreements that Campbell executed in February 2008 and May 2010.  As to the former, on February 4, 2008, Campbell entered into a two-year agreement with Verizon for a "BroadbandAccess" calling plan.[4]  (Dalmida Decl. (doc. 5, Exh. A), at Exh. 1.)  This plan gave Campbell "Mobile Broadband 3G portable wireless unlimited 3G 'hotspot' service."  (Doc. 1, ¶ 8.)  In that agreement, Campbell expressly agreed "to the current Verizon Wireless Customer Agreement (CA) ….  I understand that I am agreeing to … settlement of disputes by arbitration and other means instead of jury trials and other important terms in the CA."  (Dalmida Decl., at Exh. 1.)  The subject "Customer Agreement" includes a provision styled "Dispute Resolution and Mandatory Arbitration" (the "2008 Arbitration Clause"), whose terms are set forth in all capital letters and contained in a separate box in the Agreement.[5]  The 2008 Arbitration Clause provides that "we each agree to settle disputes (except certain small claims) only by arbitration" under the Federal Arbitration Act ("FAA") and reflects that this requirement applies to "any controversy or claim arising out of or relating to this agreement, or any prior agreement for wireless service with us …, or any product or service provided under or in connection with this agreement or such a prior agreement."  (*Id.* at Exh. 2, p. 6.)[6]  It appears undisputed that Campbell received a copy of this Customer Agreement (including the 2008 Arbitration Clause) as of February 4, 2008.

_____

[4]       To be clear, the agreement would not automatically terminate after two years; rather, the accompanying Customer Agreement clarified that "you're agreeing to maintain service with us for your minimum term. … After that, you'll become a month-to-month customer under this agreement" until Campbell terminated service.  (Doc. 5, Exh. A at Exh 2.)  As pleaded in the Complaint, Campbell maintained his contract with Verizon under the 2008 agreement until cancelling service in April 2013.  (Doc. 1, ¶ 11 ("Later, in April 2013, and per the 02/04/2008 agreement, Plaintiff cancelled his contract with Verizon Wireless via telephone with a Verizon Wireless Customer Service representative.").)

[5]       The 2008 Arbitration Clause bears a specific notation in the form of a $\infty$ symbol, which the contract defines as meaning that this provision remains in full force and effect after the Agreement ends.

[6]       In its principal brief, Verizon misquotes material portions of this language (doc. 5, at 4) and incorrectly characterizes it as "identical" to corresponding language in the 2010 Arbitration Clause (*id.* at 6).  This Court's analysis looks to the agreement's actual verbiage.

As to the latter agreement, on May 25, 2010, Campbell visited a Verizon store, "likely for a replacement wireless card." (Doc. 1, ¶ 10.). At that time, Campbell signed another agreement in which he acknowledged, "I agree to the current Verizon Wireless Customer Agreement (CA) … for services and selected features I have agreed to purchase as reflected on the receipt …. I understand that I am agreeing to … settlement of disputes by arbitration and other means instead of jury trials and other important terms in the CA." (Dalmida Decl., at Exh. 3.) The referenced "Customer Agreement" includes a provision labeled "How Do I Resolve Disputes with Verizon Wireless?" (the "2010 Arbitration Clause") and set off from the remainder of the Agreement in a separate box. The 2010 Arbitration Clause states that "[y]ou and Verizon Wireless both agree to resolve disputes only by arbitration or in small claims court," confirms that "[t]he Federal Arbitration Act applies to this agreement," and specifies that "any dispute that results from this agreement or from the Services you receive from us … will be resolved by one or more neutral arbitrators." (*Id.* at Exh. 4, p. 4.) The parties appear to concur that Campbell received a copy of this iteration of the Customer Agreement (including the 2010 Arbitration Clause) contemporaneously with signing the agreement on May 25, 2010.

## II.    Analysis.

### A.    *Legal Standard Governing Arbitration Agreements.*

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[7] In accordance with the FAA, it is well settled that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (citations omitted); *see also In re Checking Account Overdraft Litigation MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (recognizing that "[a]rbitration is a matter of contract" and that "interpretation of an arbitration agreement is generally a matter of state law," subject to the FAA's limitation that such agreements are "on an equal footing with other contracts") (citations omitted). "We must interpret the agreement by reading the words of the contract in the context

---

[7]    Plaintiff does not dispute that the FAA applies here, nor could he reasonably do so. The subject arbitration clauses specify that they are governed by the FAA; moreover, those agreements appear to fit comfortably within the parameters of 9 U.S.C. § 2, including its "involving commerce" requirement.

of the entire contract and construing the contract to effectuate the parties' intent." *Inetianbor*, 768 F.3d at 1353 (citation and internal quotation marks omitted); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties.") (citation and internal quotation marks omitted).

In construing arbitration agreements under the FAA to give effect to the parties' intent, courts must take into account the strong federal policy favoring enforcement of arbitration agreements. In that regard, "federal courts interpret arbitration clauses broadly where possible," such that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (citations omitted). "When interpreting an arbitration agreement, due regard must be given to the federal policy favoring arbitration, and ambiguities to the scope of the arbitration clause itself resolved in favor of arbitration." *Inetianbor*, 768 F.3d at 1353 (citation and internal quotation marks omitted); *see also Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014) ("When parties agree to arbitrate some matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.") (citation and internal quotation marks omitted). Of course, this presumption in favor of arbitrability is applied "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand, and where the presumption is not rebutted." *Martinez*, 744 F.3d at 1246 (citation and internal quotation marks omitted). Notwithstanding the federal policy favoring arbitration agreements, "this policy does not override the wishes of parties who have restricted the circumstances under which they agree to arbitrate disputes." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1288 (11th Cir. 2011); *see also Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) ("the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate"). These principles inform the Court's analysis of the pending Motion to Compel Arbitration.[8]

---

[8]   In his brief, Campbell insists that no presumption in favor of arbitration applies, urges the Court to apply a Rule 56 summary judgment standard, and asks that the arbitrability
(Continued)

B.      *Whether Arbitration Is Properly Compelled as to Campbell's Claims Against the Verizon Defendants.*

In the Motion to Compel Arbitration, Verizon makes a substantial, uncontested showing that Campbell and Verizon entered into two agreements containing binding arbitration clauses and that such contracts involved interstate commerce. By doing so, Verizon has satisfied its initial burden in support of its Motion. *See King v. Cintas Corp.*, 920 F. Supp.2d 1263, 1267

_____

question be decided by a jury. (*See* doc. 14, at 8-12.) These contentions miss the mark. For starters, Campbell ascribes a quotation to the Supreme Court decision in *First Options of Chicago, Inc. v. Kaplan*, that does not appear therein, and takes language out of context from *Allstar Homes v. Waters*, 711 So.2d 924, 929 (Ala. 1997), *rejected by Ex parte Perry*, 744 So.2d 859, 863-67 (Ala. 1999), by distorting it from a contract formation issue to an arbitrability issue. (*See id.* at 9.) More importantly, as to the federal policy favoring arbitration, applicable authorities and Supreme Court directives (including those cited *supra*) are pellucidly clear as to when and how that presumption works. Those decisions state plainly that the presumption in favor of arbitration applies to questions concerning the scope of arbitrable issues in an arbitration agreement. *See, e.g., Moses H. Cone Memorial Hosp.v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014) (presumption of arbitrability "applies when an arbitration agreement is ambiguous about whether it covers the dispute at hand") (citation and internal quotation marks omitted). Insofar as Campbell argues otherwise, his contentions are contrary to law. With respect to Campbell's demand for a jury trial on the arbitrability question, case law leaves no doubt that "[t]o warrant a jury trial, the party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp.2d 1101, 1111 (M.D. Ala. 2004) (citation and internal quotation marks omitted). Campbell does not deny that he entered into arbitration agreements with Verizon in 2008 and 2010; rather, he simply argues that the scope of such agreements lacks sufficient breadth to embrace this dispute. That disputed issue is one of law for the Court, and is not properly presented to a jury, whether Campbell has demanded one or not. *See, e.g., Oxford Health Plans LLC v. Sutter*, --- U.S. ----, 133 S.Ct. 2064, 2068 n.2, 186 L.Ed.2d 113 (2013) (questions "such as whether … a concededly binding arbitration clause applies to a certain type of controversy … are presumptively for courts to decide") (citation and internal quotation marks omitted); *Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 296, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) ("whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination") (citations and internal marks omitted); *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004) (characterizing as "questions of law" issues "such as a district court's interpretation of an agreement to arbitrate (and whether it binds the parties to arbitrate)").

(N.D. Ala. 2013) (recognizing that under Alabama law, "a party seeking to compel arbitration must prove (1) the existence of a contract containing an arbitration agreement and (2) that the underlying contract evidences a transaction affecting interstate commerce") (citation omitted). Accordingly, the burden shifts to Campbell "to present evidence that the arbitration agreement is not valid or that it does not apply to the dispute in question." *Id.*[9]  Campbell focuses his attention on the latter prong.

### 1.   *Whether the Arbitration Clauses Cover a Dispute Relating to Verizon Charges for 4G Service and Alleged Billing Fraud after Spring 2013.*

Although he raises a plethora of arguments opposing referral of his claims against Verizon to arbitration, Campbell leans heavily on his objection that this case is outside the scope of the 2008 and 2010 Arbitration Clauses.  Simply put, Campbell's position is that "[t]here is no claim in this case that 'arises out of and relates to the Customer Agreement' or any other obligation associated with the two signed Verizon Wireless contracts."  (Doc. 14, at 2.)  He reasons that "[t]his is not a contract case" and insists that his Complaint includes no claims seeking to hold Verizon liable "for acts relating to the performance of the two signed agreements."  (*Id.* at 3.)  He elaborates that, in his view, the 2008 and 2010 agreements ended in April 2013 when he canceled his Verizon service, and that Verizon's alleged wrongful acts animating his Complaint "occurred after the contracts had ended" and thus "had nothing to do with the performance of any signed contracts."  (*Id.* at 3-4.)[10]

---

[9]     It is appropriate to consider Alabama law in interpreting the arbitration clauses at issue, albeit through the lens of the federal policy favoring arbitration.  *See, e.g., Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475-76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ("in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], … due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"); *FusionStorm, Inc. v. Presidio Networked Solutions, Inc.*, 871 F. Supp.2d 1345, 1353 (M.D. Fla. 2012) ("In construing arbitration agreements within the scope of the FAA, courts apply general state-law principles of contract interpretation but also afford due regard to the federal policy favoring arbitration.").

[10]     In making such arguments, Campbell also holds forth at length that, in his view, an unsigned written agreement from Verizon's Harvey, Louisiana store dated October 7, 2011 cannot serve as the legal basis for compelling arbitration in this case.  In effect, Campbell is building (and subsequently tearing down) a straw man.  Nowhere in its Motion to Compel Arbitration does Verizon argue (or even suggest) that arbitration may be compelled pursuant to an October 7, 2011 agreement from the Harvey, Louisiana store.  Plaintiff cannot defeat the (Continued)

Campbell's argument that his claims against Verizon exceed the scope of the Arbitration Clauses because they are unrelated to performance of the signed agreements is unpersuasive.  As an initial matter, contrary to the crabbed, narrow reading that Campbell assigns them, the relevant provisions of these contracts are worded expansively.  In particular, the 2008 Arbitration Clause specifies that "***any*** controversy or claim ***arising out of or relating to*** this agreement" will be settled by arbitration.  Similarly, the 2010 Arbitration Clause sets forth the parties' agreement to arbitrate "***any*** dispute that ***results from this agreement or from the Services you receive*** from us."  Such broad language supports a much more liberal interpretation of the parties' arbitration obligations than Campbell would admit.  *See, e.g., Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1320 n.23 (11th Cir. 2002) (characterizing as a "broad arbitration clause" one "which required arbitration of any dispute arising out of or relating to the contract at issue") (internal marks omitted); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2nd Cir. 1998) (describing as a "prototypical broad arbitration provision" one including language covering any dispute "arising under or in connection with" the agreement, and opining that "this is precisely the kind of broad arbitration clause that justifies a presumption of arbitrability").[11]

Campbell interprets the Arbitration Clauses as covering <u>only</u> those disputes concerning (i) the "BroadbandAccess" plan (*i.e.*, the 3G wireless hotspot service) he received from Verizon beginning in February 2008 or (ii) the replacement wireless card he received from Verizon in May 2010, and <u>only</u> during the time period in which the underlying service contract was in

---

Motion to Compel Arbitration by systematically dismantling an argument that movants never even articulated.  Simply put, the so-called "Harvey Contract" is not relevant to the Motion to Compel Arbitration (inasmuch as Verizon does not rely on it as a source for Campbell's alleged arbitration obligation in this case) and need not be discussed further herein.

[11]     *See also Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1329 & n.1 (11th Cir. 2005) (arbitration clause is "broadly worded" where it provides for arbitration of "any controversy or claim … arising out of or relating to [the] agreement"); *Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("The agreement could not have been broader.  Any disputes means all disputes, because any means all. … The agreement reaches this dispute because the agreement reaches any and all disputes.") (citations and internal quotation marks omitted); *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) (characterizing arbitration clause covering "any dispute" between the parties as "unequivocal and all-encompassing").

effect.  The problem with engrafting such boundaries onto the Arbitration Clauses is that doing so would both ignore language found in the subject agreements and also inject new concepts not found in those agreements.  As a matter of contract interpretation under Alabama law, this is impermissible.  *See, e.g., Dawkins v. Walker*, 794 So.2d 333, 339 (Ala. 2001) ("A court may not make a new contract for the parties or rewrite their contract under the guise of construing it."); *Matthew's Masonry Co. v. Aldridge*, 25 So.3d 464, 469 (Ala.Civ.App. 2009) ("A court cannot, in the guise of contract construction, create a new contract for the parties by ignoring the express provisions of the original contract.").

Specifically, on its face, the 2008 Arbitration Clause applies to "any controversy or claim arising out of relating to this agreement."  The provision does not purport to be limited to disputes concerning 3G wireless hotspot service, nor does it purport to be temporally constrained to the period in which the 3G service contract is in effect.[12]  Similarly, the 2010 Arbitration Clause expressly covers "any dispute that results from this agreement or from the Services you receive from us."  By its plain terms, the scope of this clause is not restricted to disputes relating to the replacement wireless card Campbell obtained when he signed the agreement, nor does the Arbitration Clause purport to be limited to disputes arising in a particular temporal span.  Inasmuch as the arbitration agreements do not expressly exclude categories of claims (*i.e.*, claims relating to billing disputes for services other than the 3G hotspot service or the replacement wireless card, or claims arising after the existing service plan was canceled), this Court cannot and will not unilaterally solder such restrictions onto those agreements under the guise of interpreting them.  *See, e.g., Weiner v. Tootsie Roll Industries, Inc.*, 412 Fed.Appx. 224, 228 (11th Cir. Feb. 2, 2011) ("Because the Arbitration Act creates a presumption in favor of arbitrability, the parties must clearly express their intent to exclude categories of claims from their arbitration agreement.") (citation and internal quotation marks omitted).

Moreover, even assuming that Campbell's narrowly circumscribed interpretation of the Arbitration Clauses were reasonable, Verizon has identified alternative reasonable constructions

---

[12]     To the contrary, the 2008 Arbitration Clause bears a ∞ symbol, which the agreement explains as follows:  "**THIS AGREEMENT STARTS WHEN YOU ACCEPT.** Paragraphs marked '∞' continue after it ends." (Dalmida Decl., at Exh. 2, p.1.)  By its plain language, then, this agreement clearly rebuts Campbell's argument that the 2008 Arbitration Clause did not survive his cancelation of the service contract in April 2013.

of those provisions that would favor their application here.  In Verizon's view, the 2008 Customer Agreement established and governed the customer/provider relationship between Campbell and Verizon beginning in February 2008.  Under that logic, a dispute between them over whether Verizon had properly invoiced Campbell for services provided or whether it had engaged in fraudulent or otherwise unlawful billing or debt collection practices as to those invoices could reasonably be viewed as a "controversy or claim arising out of or relating to" the 2008 Customer Agreement (again, the contract on which the parties' entire relationship for provision of and payment for wireless services was based), so as to be arbitrable under the 2008 Arbitration Clause.[13]  Similarly, the 2010 Arbitration Clause purports to cover "any dispute that results … from the Services you receive from us."  The term "Services" is not defined in the 2010 Customer Agreement.  Verizon maintains that it provided 4G services to Campbell in 2013, and that a dispute arose between the parties as to Verizon's billing and collection practices for those services.  A reasonable reading of the 2010 Arbitration Clause would place this dispute within the scope of that clause, as one resulting from services that Campbell allegedly received from Verizon.

In response, Campbell blasts Verizon's argument as "a reach" that this Court should not indulge.  (Doc. 14, at 7.)[14]  But that is not the standard governing Verizon's Motion to Compel

---

[13]     Another way to think of it is as follows:  The Eleventh Circuit (and certain Alabama authorities cited by plaintiff) has viewed this kind of "arising out of or relating to" arbitration clause as meaning that "where the dispute occurs as a fairly direct result of the performance of contractual duties … then the dispute can fairly be said to arise out of or relate to the contract in question, and arbitration is required."  *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001).  Both Customer Agreements at issue in this case included detailed recitations of Verizon's billing practices and obligations.  The dispute between Campbell and Verizon occurred as a fairly direct result of the manner and methods by which Verizon charged him for services and referred his account to collection (*i.e.*, Verizon's billing practices and decisions with regard to Campbell's account established by the subject Customer Agreements); therefore, the dispute can fairly be said to arise out of or relate to those agreements, and arbitration is required.

[14]     In so doing, he relies on *Koullas v. Ramsey*, 683 So.2d 415, 418 (Ala. 1996), while overlooking more recent Alabama Supreme Court decisions that distance themselves from the rationale of *Koullas* and construe arbitration provisions like the ones at issue here broadly.  *See, e.g., Ex parte AIG Baker Orange Beach Wharf, L.L.C.*, 49 So.3d 1198, 1203 (Ala. 2010) (explaining that, "contrary to … *Koullas*, … provisions applying to claims 'arising out of or related to' a contract are broader in scope than those 'arising from' or 'arising under'").  He also (Continued)

Arbitration.  This Court's assignment is not to pick and choose which of Campbell's or Verizon's interpretation of the scope of the arbitration agreements it finds to be more plausible or less of "a reach."  Again, there is a statutory presumption at issue here, borne of the strong federal policy favoring arbitration.  Campbell's analysis would effectively excise that strong public policy interest from the equation; however, this Court cannot do so.  Instead, the undersigned must implement the Supreme Court's unequivocal directive that "where, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."  *Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 298, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (citations and internal quotation marks omitted).  What this means is that, where the parties agree that an arbitration clause exists but disagree as to whether their dispute lies within its scope, arbitration should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citation omitted).[15]

In opposing the Motion to Compel Arbitration, Campbell has indeed raised doubts as to whether the scope of the arbitration agreements he entered into with Verizon upon buying 3G hotspot services in 2008 and a replacement wireless card in 2010 is broad enough to encompass allegations of billing/collections misconduct and fraud by Verizon with respect to 4G services after cancellation of the previous service contract.  However, given the unambiguous federal mandate to interpret arbitration clauses broadly where possible, those doubts raised by Campbell

---

focuses almost exclusively on the terms of the 2008 Arbitration Clause, without meaningfully addressing the "results from … the Services you receive from us" language of the 2010 Arbitration Clause.

[15]    This "susceptible of an interpretation that covers the asserted dispute" standard continues to be applied in the Eleventh Circuit through the present day.  *See, e.g., U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311-12 (11th Cir. 2014) (reversing district court and compelling arbitration where "it cannot be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers this dispute") (citations and internal quotation marks omitted); *Dasher*, 745 F.3d at 1114 (applying same standard).

as to the scope of arbitral issues must be resolved in favor of arbitration.  Stated differently, it cannot be said with positive assurance that the arbitration clauses at issue in this case are not susceptible of an interpretation that covers Campbell's claims against Verizon; therefore, arbitration must be compelled.

### 2.    *Whether the Arbitration Clauses Cover Tort Claims.*

Campbell also seeks to avoid arbitration by arguing that the subject arbitration clauses contain only a "promise to arbitrate contractual disputes."  (Doc. 14, at 6.)  He reasons that the tort claims presented in his Complaint lie beyond the reach of the Verizon arbitration agreements because those agreements are somehow limited to contract claims.  The Court disagrees.  The general premise that contractual arbitration clauses do not allow for arbitration of independent tort claims is incorrect, as a matter of law.  *See, e.g., Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("The law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause."); *Hersman, Inc. v. Fleming Companies, Inc.*, 19 F. Supp.2d 1282, 1285 (M.D. Ala. 1998) ("Tort claims may be subject to contractual arbitration provisions.").  Moreover, the Verizon arbitration clauses' broad language covering "any controversy or claim" or "any dispute" necessarily calls for arbitration of all species of claims, not merely contract claims.  *See Bullard v. Capital One, F.S.B.*, 288 F. Supp.2d 1256, 1258 (N.D. Fla. 2003) (construing arbitration clause covering "any legal claim" as "includ[ing] arbitration of contract, tort, and civil theft claims, as well as any other 'legal claim' between" the parties regarding the subject account).[16]  Again, the Court cannot write in or enforce phantom restrictions to the arbitration clauses that are not there.  Besides, it has been said

---

[16]     Campbell suggests that tort claims must be excluded unless they are specifically referenced by name in the arbitration agreements.  (*See* doc. 14, at 8 ("[T]he Verizon Wireless arbitration clause is silent as to future tortious conduct.  When it is clear that the arbitration clause has not included certain issues, those issues will not be considered arbitrable.")  This contention is irreconcilable with applicable law.  Again, the arbitration clauses are worded broadly.  They do not specify that only contract claims are arbitrable.  They say that "any" claims are arbitrable.  "Any" means "all," and it is not necessary for an arbitration clause affirmatively to recite every possible form of claim by name in order for them to be included.  *See generally Chambers v. Groome Transp. of Alabama*, --- F. Supp.2d ---, 2014 WL 4230056, *14 (M.D. Ala. Aug. 26, 2014) ("[A]n agreement to arbitrate any action, dispute, claim, counterclaim or controversy between the parties includes the arbitration of statutory claims because any disputes means all disputes, because 'any' means 'all.'") (citations and internal marks omitted).

that "[t]he key element in determining whether tort claims are subject to an arbitration provision is the relationship between the claims asserted and the underlying contractual obligations." *Hersman*, 19 F. Supp.2d at 1285. Here, for the reasons explained in § II.B.1., *supra*, giving due regard to the strong federal policy favoring arbitration, the Court concludes that Campbell's tort claims against Verizon have a sufficient nexus to the underlying agreements (including the billing procedures and practices outlined therein) so as to be subject to the arbitration clauses.[17]

### 3.   *Whether the Arbitration Clauses are Voidable.*

As an alternative argument against arbitration, Campbell posits that the arbitration clauses are "voidable" under "generally applicable contract defenses," and that the Motion should be denied on that basis. (Doc. 14, at 11.) Plaintiff is correct that "[u]nder the so-called saving clause of FAA § 2, an arbitration agreement may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (citation and internal quotation marks omitted). However, Campbell comes forward with neither specific facts nor cogent argument that any such "generally applicable contract defenses" would operate to strike down the Verizon arbitration

---

[17]       The same result is warranted under Alabama law. In this regard, the Alabama Supreme Court's decision in *Green Tree Financial Corp. v. Shoemaker*, 775 So.2d 149 (Ala. 2000), is instructive. In *Shoemaker*, the plaintiffs purchased a manufactured home from the defendant on an installment contract. That contract included an arbitration provision, requiring plaintiffs to arbitrate "[a]ll disputes, claims or controversies arising from or relating to this Contract." *Id.* at 150. The plaintiffs later brought various tort claims challenging the defendant's methods and manners of collecting debt owed by the plaintiffs. The *Shoemaker* Court deemed these tort claims to be covered by the arbitration provision because "[t]here can be nothing more 'relating to' a financial transaction than the efforts a party takes to collect a debt created as a part of that transaction." *Id.* at 151. The *Shoemaker* Court formulated the applicable rule as follows: "[A]n arbitration clause should not be enforced to require arbitration of a claim alleging an intentional tort that is ***in no way related to the underlying transaction*** that gave rise to the arbitration agreement." *Id.* at 151 n.3 (emphasis added); *but see Ex parte Discount Foods, Inc.*, 789 So.2d 842, 846 (Ala. 2001) (rejecting notion that "intentional torts unrelated to the underlying transaction that gave rise to the arbitration agreement can never be encompassed in a broad arbitration provision"). Here, as already discussed, it cannot reasonably be concluded that Campbell's tort claims against Verizon are "in no way related to" the customer / service provider relationship established by the subject agreements. The Court's conclusion, *supra*, that Campbell's claims against Verizon (albeit sounding in tort) arise out of or relate to the underlying customer agreements (and/or result from services Campbell received from Verizon) defeat plaintiff's suggestion that his claims sounding in tort are beyond the scope of the arbitration provisions.

agreements in the circumstances presented here.  Instead, he simply offers a conclusory statement that the arbitration clause "is voidable due to the fraud alleged."  (Doc. 14, at 11.) Campbell has developed this contention neither legally nor factually.  He has identified no alleged fraud by Verizon or anyone else relating to formation of the 2008 or the 2010 agreements.  This Court can neither fill in the blanks on his behalf nor accept his blanket statement that the "arbitration clause" (both of them or just one, he does not specify) has been tainted by unspecified "fraud" by Verizon to the point where it is unenforceable.  Plaintiff having failed to develop this contention either factually or legally, Verizon's request to compel arbitration will not be struck down on that basis.

### 4.       Whether Verizon Has Waived the Right to Compel Arbitration.

Next, plaintiff opposes the Motion to Compel Arbitration on the theory that Verizon has waived its right to arbitrate this dispute.  This argument is meritless.  To be sure, black-letter law teaches that "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right."  *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (citation omitted).  But no circumstances that might rationally support a finding of waiver have been identified or presented in this case.

The test for waiver of a right to arbitrate has the following two elements: (i) whether "under the totality of the circumstances, the party has acted inconsistently with the arbitration right," such as by "substantially invok[ing] the litigation machinery prior to demanding arbitration;" and (ii) whether such inconsistency by the party seeking to compel arbitration "has in some way prejudiced the other party," taking into account such factors as "the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process."  *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012) (citations omitted).  Here, no facts have been offered to lend credence to either element.  The totality of the circumstances does not support a finding that Verizon acted inconsistently with the arbitration right.  On the contrary, Verizon filed its Motion to Compel Arbitration mere days after being served with process, and just 32 days after Campbell filed suit against it.  The Court finds that Verizon's utilization of the debt-collection process with Campbell before this lawsuit commenced is in no way inconsistent with the exercise of its right to settle this dispute via binding arbitration once Campbell sued Verizon for alleged misdeeds in attempting to collect the

debt.[18] And any suggestion that Verizon's minimal "delay" in demanding arbitration has prejudiced Campbell would be frivolous. In short, Verizon has not waived its right to compel arbitration.

> **5.      *Whether the Arbitration Clauses Cover Federal Statutory Claims.***

Finally, Campbell appeals to public policy, insisting that his federal statutory claims "should not be subject to compulsory arbitration." (Doc. 14, at 13.) An avalanche of binding authority conclusively refutes this argument. Indeed, the Supreme Court has clarified that courts must enforce agreements to arbitrate according to their terms "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, --- U.S. ---, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012) (citations and internal quotation marks omitted).[19] Simply put, "[t]here is no reason to depart from" the presumption in favor of arbitrability "where a party bound by an arbitration agreement raises claims founded on statutory rights." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Campbell points to no clear, specific expression by Congress that claims brought under the FDCPA, the FCRA, or any other federal statute at issue in this case should not be referred to

---

[18]      Plaintiff appears to labor under the impression that Verizon was obligated to commence arbitration proceedings immediately when Campbell refused to pay the $148 wireless bill, and that by failing to do so, Verizon waived its arbitration right for all matters for all time. Among other defects, such an argument mixes apples and oranges. As Campbell himself has conceded, this case does not involve claims of non-payment of a wireless bill; instead, it centers on Campbell's claims of misconduct by Verizon in the debt collection process. Those claims did not come to the fore until November 10, 2014, when Campbell filed his federal lawsuit against Verizon. Thereafter, Verizon promptly moved to compel arbitration on December 12, 2014. The Court is aware of neither contractual language nor legal authority supporting a finding of waiver where the claims at issue (*i.e.*, Campbell's federal statutory and intentional tort claims) were first asserted by the other party one month before arbitration was demanded, and mere days after the movant was served with process.

[19]      *See also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1275-76 (11th Cir. 2011) ("both the Supreme Court's and our Circuit's precedents have squarely held that contracts providing for arbitration of U.S. statutory claims are enforceable, absent a contrary intention clearly and specifically expressed by Congress"); *Anders*, 346 F.3d at 1030 ("[f]ederal statutory claims are as a rule arbitrable"); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998) ("Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration.").

arbitration. Given that glaring omission, the Court readily concludes that Campbell's invocation of "public policy" does not bar enforcement of the subject arbitration agreements as to his federal statutory claims.

C.     *Whether the Entire Litigation Should Be Stayed Pending Arbitration of the Verizon Claims.*

Having found that Campbell's claims against Verizon are properly subject to arbitration under the terms of the 2008 Arbitration Clause and/or the 2010 Arbitration Clause, the Court now turns to Verizon's request for a stay. By the express terms of the FAA, the finding that Campbell's claims against Verizon are properly referred to arbitration warrants a stay of those claims in this proceeding. *See* 9 U.S.C. § 3 (where case involves arbitrable claims under a written arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). Accordingly, the request for stay is **granted** as to Campbell's claims and causes of action asserted against Verizon herein.

But Verizon's request for stay is broader than that. Indeed, Verizon's position is that "the Court should stay this entire action pending arbitration" (doc. 5, at 19). A stay of "this entire action" would encompass Campbell's claims against defendants Diversified Consultants, Inc., Experian Information Solutions, Inc. and TransUnion LLC. None of those defendants have moved to compel arbitration or asserted that Campbell's claims against them are subject to binding arbitration agreements. By all appearances, those claims are nonarbitrable. Verizon offers neither explanation nor authority for why the 9 U.S.C. § 3 stay entered in this case should (or properly could) extend to those nonarbitrable claims as well.[20]

Fortunately, applicable law is clear. "When confronted with litigants advancing both arbitrable and nonarbitrable claims, … courts have discretion to stay nonarbitrable claims." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). "That decision is one left to the district court … as a matter of its discretion to control its docket." *Moses H. Cone Memorial Hosp. v.*

---

[20]     At most, Verizon simply offers a citation to *Suarez-Valdez v. Shearson Lehman / American Exp., Inc.*, 858 F.2d 648 (11th Cir. 1988), in which the Eleventh Circuit found that the trial court erred by refusing to stay discovery pending arbitration. There is no indication, however, that *Suarez-Valdez* involved both arbitrable and nonarbitrable claims, nor is there any reason to believe that Verizon is similarly situated to the *Suarez-Valdez* defendants.

*Mercury Const. Corp.*, 460 U.S. 1, 20 n.23, 103 S.Ct. 927, 74 L.Ed. 765 (1983) (citation omitted). "In this instance, courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay*, 389 F.3d at 1204 (noting exceptions where "arbitrable claims dominate" or "the outcome of the nonarbitrable claims will depend upon the arbitrator's decision"). In the circumstances presented here, the Court perceives no reason (and Verizon has identified none) why it would not be feasible to proceed with Campbell's nonarbitrable claims against the other defendants in this litigation, even as his arbitrable claims against Verizon move forward in the arbitral forum. To the contrary, it appears that staying the nonarbitrable claims pending arbitration of the Verizon claims would needlessly delay resolution of Campbell's nonarbitrable claims, with no countervailing benefits in terms of efficiency or conservation of litigant or judicial resources. To use the *Klay* vernacular, the arbitrable claims do not appear to dominate over the nonarbitrable claims, nor does it seem likely that the outcome of Campbell's nonarbitrable claims will hinge on the arbitrator's decision in the Verizon claims. For all of these reasons, the Court exercises its discretion by **denying** Verizon's request for a stay of this entire lawsuit pending arbitration of Campbell's claims against the Verizon entities.

## III.   Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.      Plaintiff's Motion to Strike Affidavit of Jennifer Dalmida (doc. 15) is **denied**;

2.      The Verizon defendants' Motion to Strike Affidavit of Allen F. Campbell (doc. 26) is likewise **denied**;

3.      The Motion to Compel Arbitration and Stay Judicial Proceedings (doc. 5) filed by defendants Verizon Wireless, LLC, Verizon Wireless and Verizon is **granted in part**, and **denied in part**, as set forth in Paragraphs 4 and 5;

4.      The Motion to Compel Arbitration is **granted**. Plaintiff and defendants Verizon Wireless, LLC, Verizon Wireless and Verizon are **ordered** to proceed to arbitration in accordance with the terms of the arbitration clauses set forth in the customer agreements to which plaintiff agreed in writing in February 2008 and May 2010. This arbitration shall encompass all of plaintiff's claims against the three Verizon defendants, but none of his claims against any other defendant;

5.     Notwithstanding the determination that Campbell's claims against the Verizon entities must be arbitrated, this Court retains jurisdiction to confirm or vacate the resulting arbitration award pursuant to 9 U.S.C. §§ 9-10.  *See TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1297 (11th Cir. 1998).  On that basis, and in accordance with 9 U.S.C. § 3, the Motion to Stay Judicial Proceedings is **granted** as to Campbell's claims against the Verizon entities, and all such claims and causes of action asserted herein are **stayed** pending the outcome of arbitration.  In the Court's discretion, the Motion to Stay Judicial Proceedings is **denied** as to Campbell's claims against the other defendants (Diversified Consultants, Inc., Experian Information Solutions, Inc. and TransUnion LLC).  These judicial proceedings will move forward as to all claims and causes of action against the non-Verizon defendants.  The parties' deadline to submit their Rule 26(f) report by no later than January 30, 2015 (*see* doc. 12) is hereby **extended** through **February 6, 2015**; and

6.     To keep the Court apprised of significant developments in the parallel arbitration case, beginning in **February 2015**, Verizon is **ordered** to file, on or before the **fourth Wednesday of each month**, a written report reflecting the current status of the arbitral proceedings.


DONE and ORDERED this 29th day of January, 2015.


                              s/ WILLIAM H. STEELE
                              CHIEF UNITED STATES DISTRICT JUDGE